**HI-WAY ELECTRIC COMPANY, an Illinois Corporation, Plaintiff,**

v.

**PATHMAN CONSTRUCTION COMPANY, an Illinois Corporation, and the Home Indemnity Company, a New York Corporation, Defendants.**

**Civ. A. No. 36098.**

United States District Court,
E. D. Michigan, S. D.

Feb. 23, 1971.

Edward R. Nathanson, Chicago, Ill., for Hi-Way Electric Co.

Riley & Roumell, by Jane K. Souris, Detroit, Mich., for Pathman Construction.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is an action brought under the Miller Act, 40 U.S.C. §§ 270a–270e. On April 26, 1968, defendant and counterclaimant[1] Pathman Construction ("Pathman") entered into a contract with the United States of America, through its agent, the United States Navy Department, Naval Facilities Engineering Command, known as Contract No. N 62465–68–C0183, for construction work to be done at Selfridge Air Force Base, Mt. Clemens, Michigan. This contract called for the construction of three new buildings, and remodeling work to be done in seven other buildings, four of which were hangars and three were office buildings.

Plaintiff, Hi-Way Electric Company ("HiWay"), is an electrical contractor. On July 1, 1968, Pathman contracted with HiWay for HiWay to do the electrical work specified in the prime contract and which concerned the new buildings and the remodeled buildings at the Selfridge Air Force Base project. Under the terms of the subcontract, HiWay was to be paid a base price of $270,000. According to the terms of defendant Pathman's contract with the Navy, all work was to be completed by July 26, 1969. The Navy granted Pathman five time extensions, making the final date for completion, January 8, 1970. The project was accepted by the Navy on February 28, 1970.

This matter was submitted to the Court in a bench trial upon the issues of Count One of the Complaint filed on February 23, 1971; the Answers of defendants filed April 19, 1971, as amended on April 19, 1972; upon the issues of the Counterclaim filed by the defendants on April 19, 1972; and upon the issues as they were joined by the Reply to said Counterclaim which plaintiff filed on May 3, 1972.

The evidence was heard by this Court over a protracted period of time commencing July 31, 1973 and concluding, after a year intermission, on September 25, 1974. In all, the Court listened to almost ten weeks of testimony and received approximately 155 exhibits.

In Count One of its complaint, HiWay seeks damages against defendant Pathman, the prime contractor, and against The Home Indemnity Company ("Home"), as surety, in the amount of $49,237.32 for electrical work allegedly performed by HiWay under the prime contract and for certain additional extra

[1.] The Home Indemnity Company is a party merely as surety on a payment bond executed by the defendants to the United States of America in accordance with Title 40 U.S.C. § 270a. Reference will hereafter be made only to Pathman as defendant and counterclaimant.

work allegedly performed by HiWay during the construction. This amount was subsequently reduced to $48,653.04 by amendment. In its Counterclaim, defendant Pathman seeks damages allegedly incurred by HiWay's breach of its subcontract, which breach was the alleged cause of the delays which occurred throughout all major phases of the construction process and in the final completion. In addition, defendant denies that it owes the plaintiff anything further on the contract because of this breach. As a result of these delays, Pathman claims it was forced to make expenditures of $159,631.31. This amount was subsequently reduced to $144,610.45.

## FINDINGS OF FACT

### A. HiWay's Claim for Balance Due

1. HiWay, the electrical subcontractor of defendant, the prime contractor, is suing the prime contractor and its bonding company for the balance due under the subcontract and also for extra services and materials provided which were not included in the contract price. The aggregate claim for balance due is $48,653.04.

2. HiWay's claimed balance is based on the original contract price as modified by five change orders, plus three claimed extras. The change orders were authorized by Pathman and carry the signature of its president, William J. Pathman. (Plaintiff's Exhibit C2). The evidence established that in addition to the $270,000 due under the subcontract as originally executed, a total of

$1,569.91 is due to the plaintiffs under the change orders as follows:

| Order No. 4083 | $1378.25 |
| Order No. 4089 | 245.66 |
| Order No. 4117 | (683.00) credit |
| Order No. 4190 | 139.85 |
| Order No. 4240 | 489.15 |
| Net Total | $1569.91 |

3. Under Change Order No. 1 (No. 4083, *supra*), plaintiff claims and the evidence establishes the defendant owes plaintiff $1,378.25. This claim is for the premium time paid to a night shift which worked to provide the electrical needs of the masonry night shift. Pathman denies liability for Change Order No. 1, asserting that, *inter alia*, Change Order No. 1 is not legally binding because it was signed under duress, and that payment of premium time is a contractual obligation of HiWay under the subcontract agreement. Through the testimony of Andrew Leer, president and accountant, and through the introduction of its business records (Plaintiff's exhibit C-2), HiWay established by a preponderance of the evidence that it is entitled to recovery in the amount of $1,378.25 under Change Order No. 1. The Court does not find that Change Order No. 1 was signed under duress, nor does it find that it was the intent of the parties that payment for premium time be included in the contract price.[2]

4. During the course of construction, certain extra work orders were issued by Pathman to HiWay which HiWay claims represent work performed by HiWay which was not included in the original contract price. HiWay claims

2. See, for example, Defendant's Exhibit 2, in which Pathman acknowledges plaintiff's contention that overtime work was not contemplated as part of its original bid. This letter refers the addressee to two paragraphs of the Subcontract Agreement, Paragraph 6 and Paragraph 9. This Court finds that both paragraphs refer to situations where the subcontractor is responsible for a delay in his scheduled work. This claim does not present such a situation. As is indicated by Mr. Powell, writing for Pathman, in defendant's exhibit 2, the delay which caused the subcontractor to work overtime was due to the fact "that the Navy has not granted us the necessary time extension due to the initial strikes by all trades, including yours, in the inception of the job to the extent necessary to avoid this tight schedule. As a consequence we are forced to work at this pace in order to meet the schedule set by the Navy or pay penalties of $550.00 per day." See, also, plaintiff's exhibit AA, letters dated January 30, 1969 and March 12, 1969.

an aggregate of $2,440.48 is due for this further electrical work, as follows:

| | | |
|---|---|---|
| Invoice No. 4259 | $ 257.38 | |
| Invoice No. 4293 | 252.99 | |
| Invoice No. 4411 | 1260.73 | (premium time) |
| Invoice No. 4639 | 218.87 | |
| Invoice No. 5056 | 450.91 | (disconnect switches) |
| Total | $2440.88 | |

5. HiWay's claim of $1260.73 and $252.99 (Invoice Nos. 4411 and 4259, *supra*) is for the cost of the labor and material for temporary lighting for the masons working on the Barracks Building (Plaintiff's exhibit C–3). Included in plaintiff's exhibit C–3 is a letter dated March 13, 1969 addressed to Mr. Williams of HiWay and signed by Mr. Etling, General Superintendent of Pathman. The letter states, on its face, that it will serve as authority for HiWay to proceed with the temporary electric power and lighting as required for the masonry work in the Barracks Building. Attached to each of the two invoices are the respective work orders which all bear the signature of Jerry Linden as representative for Pathman. On March 31, 1969, Pathman appeared to reject HiWay's claim of $252.99 on the grounds that temporary lighting was already being paid for under HiWay's subcontract (Defendant's exhibit 22). Nevertheless, this Court finds that the temporary wiring described in Invoice No. 4293 and No. 4411 was not part of HiWay's original contractual obligation. Rather, this work was performed by HiWay in accordance with authorization from Pathman's field superintendent due to the requirement of the mason contractor.

6. HiWay's claim of $450.91 (Invoice No. 5056, *supra*) is for two 400A 3P disconnect switches which it provided in accordance with Work Order No. 1122. Work Order No. 1122 is signed by William Spray, Pathman's field superintendent. Pathman contends that Mr. Spray signed for the switches only for the purpose of acknowledging delivery. (Defendant's Proposed Findings of Fact No. 27). It is further contended by defendant that Mr. Spray had no authority to authorize payment on behalf of Pathman and that HiWay was aware of this. This Court does not credit defendant's contention on this point. In addition, the Court finds that provision of disconnect switches for air conditioning controls was not covered under the work and materials which HiWay was required to provide as part of its subcontract. Accordingly, the Court finds that Pathman is liable to HiWay in the amount of $450.91 for extra work supplied by HiWay.

7. Defendants do not dispute HiWay's claim for $218.87 (Invoice No. 4639, *supra*), $245.66 (Purchase Order No. 4089, supra), and $489.15 (Purchase Order No. 4240, *supra*). This Court Finds that HiWay is entitled to a total of $273,928.56 for work performed pursuant to the base subcontract, the change orders and the extra work orders.

8. Pathman paid HiWay an aggregate of $224,550.99 on account. Therefore, defendant owes to HiWay the sum of $48,653.04, which constitutes the total due under the base subcontract, change and extra work orders, after applying all payments on account, credits and back charges which defendant has alleged against HiWay (Defendant's Proposed Findings of Fact and Conclusions of Law Nos. 31 through 38) were properly back charged to HiWay.[3] Accordingly,

---

3. Pathman has charged HiWay $71.39 for moving dirt for electrical poles; $645.56 for grading and excavating around the electrical transformer pad for gravel fill; and $974.98 for claims made against Pathman for labor costs incidental to two power outages. (Defendant's Proposed Findings of Fact Nos. 31, 33 and 35). This Court credits HiWay's claim that the first two back charges cover work which was included in the $806.86 in credits issued by HiWay to Pathman and already subtracted from HiWay's claim of balance due under the Subcontract. Neither of these backcharges were authorized by Hi-

the Court finds that Pathman is not entitled to recover any back charges other than what has been credited to its account by HiWay.

B. Defendants's Counterclaim

9. Defendant Pathman has counterclaimed for damages on the theory that HiWay breached its subcontractual agreement by causing delays during all of the critical major phases of the construction process. According to the allegations in the counterclaim, this breach occurred in that HiWay failed to provide sufficient workmen and materials to perform its work timely and in proper sequence with other trades; in that HiWay failed to perform in accordance with known progress schedules; and in that HiWay failed to provide all necessary temporary lighting and power.

10. During the trial, plaintiff attempted to rebut the allegations of the Counterclaim by offering into evidence numerous charts showing the sequence of various trades and identifying the dates and the locations on which the various subcontractors were working throughout the various construction phases. These charts consisted of graphs authenticated by 1,640 sheets of the Inspector's Daily Reports ("IDR") covering all of the work days. The Inspector's Daily Reports were prepared daily by the Government's Resident Officer in Charge of Construction ("ROICC"), who was present at all times on the job site during the construction period. Preparation of the IDR's was part of the duties of the ROICC and represent an official report covering construction progress.

At the end of each week while it worked under the subcontract, a "Weekly Construction Report" was regularly prepared by plaintiff's foreman. The activity of HiWay's personnel are detailed in each of these reports.

The defendant, Pathman, attempted to modify the impact of these charts and reports by use of some of its own time sheets, some of HiWay's time sheets, some of the mason contractor's time sheets and parts of the IDR's. Neither the proposed modifications nor the testimony of defendant's witnesses were sufficiently credible to impeach the accuracy of the charts which plaintiff submitted and which were based on the IDR's prepared by the Government. Accordingly, the Court finds that the charts and construction reports introduced into evidence by plaintiff establish by a preponderance of the evidence that HiWay timely performed the work required of it under each phase of the subcontract. The evidence further tends to prove that the delays which occurred resulted instead from the failure of defendant Pathman to properly coordinate and supervise the various trades during the course of construction or to timely provide the materials and manpower for these trades for which it was responsible under the prime contract.

11. In a series of five letters sent between June 4, 1968 and March 10, 1969 to the Naval Command, Pathman ascribed the delays complained of herein to strikes and to the resulting additional time required to remobilize its work forces.[4] This Court finds that these let-

---

Way. The evidence further establishes that the power outages for which Pathman claims $974.98 as a back charge were in fact scheduled for testing purposes in accordance with normal and customary practices of the construction industry. The evidence does not support the contention that this backcharge was for a failure of power or light during a scheduled work period.

4. For example in a letter dated December 11, 1968, William Pathman, writing on be-

half of Pathman Construction Company, outlined the effect of the strike and attributed the delays in the construction schedule to the earlier work stoppages in the Detroit area as follows: "The strike set back our concrete operations into the winter season thus incurring further delay since labor productivity in cold weather simply is not as efficient. The strike had the further effect of drastically reducing available manpower in skilled trades following resumption of work so that it has since been difficult to man the

ters constitute an admission on the part of Pathman, and further weaken the credibility of its witnesses who testified that the primary responsibility for the construction delays belonged exclusively to HiWay. The Court gives little if any weight to letters and telegrams which Pathman sent to HiWay requesting HiWay to add additional electrical manpower during the period between August 1969 and December 1969. Each of these communications were responded to adequately by HiWay.

12. Lieutenant E. N. Norman was the United States Resident Officer in Charge of Construction at the Selfridge Air Force Base. On December 18, 1969 he sent a telegram to Pathman which read as follows:

"Gentlemen, the progress of your electrical SubContractor is not satisfactory. The electrical installations are completed in only one of the eight buildings which you are now working. We are unable to turn the heat on in the technical training building because of the lack of power and power wiring. I am hopeful that you will take immediate action to expedite the electrical installations." (Defendant's exhibit 80)

The Court finds that this telegram on its face goes against the weight of the evidence, especially in light of the in court testimony of Lt. Norman.[5] Accordingly, the Court discounts the telegram, and credits instead the testimony of Lt. Norman when he stated that in his opinion HiWay was not responsible for any substantial delay in job progress. The Court further credits Lt. Norman's explanation of the telegram as an attempt to obtain heating in the Marine Hangar Building which was

being remodeled. Subsequent to his sending the telegram, Lt. Norman learned, and the Court so finds, that the heating in this building was dependent on the installation of plywood backing which was the responsibility of the prime contractor and not of HiWay.

In his telegram, Lt. Norman had also referred to permanent heat in the AVTEC Building. The Court credits the testimony of Lt. Norman that in fact HiWay did not delay the turning on of the permanent heat in the AVTEC Building, nor did it delay the testing of the boilers in the Subsistence Building earlier.

Lt. Norman, who was the ROICC on the job from about June 7, 1969, through completion of the job, further testified that the quality of the coordination between the prime contractor and the subcontractors ranged from mediocre to poor and that this lack of coordination was aggravated because the prime contractor changed superintendents on the job four or five times during the course of construction. The Court finds the testimony of Lt. Norman credible on this point.

13. In an effort to establish the allegations of the Counterclaim, Jerome Linden, Pathman Construction Company's job superintendent, testified that HiWay had failed to provide temporary power and light both at the commencement of the project and throughout the balance of the job. He also testified that when he came on the job in September, 1968, he did not see any poles for electrical power or service. The Court finds that his testimony goes against the weight of the evidence and does not credit it. The testimony of Francis Murphy, an electrical Engineer and

job properly. "In our original schedule when we bid the job, we contemplated masonry operations in the autumn and consequently did not budget cold weather protection. Due to this strike, masonry operations cannot start until spring, six months later than our planned starting date." (Plaintiff's exhibit HH4)

5. The Court notes that Lt. Norman was designated in the pretrial order as a witness for both plaintiff and defendant. Only the plaintiff called him to testify during trial.

HiWay's chief estimator, and the testimony of Robert A. Goodman, HiWay's vice president, were much more credible. Both men testified for the plaintiff, and their testimony was supported by the IDR's, that there was ample temporary and permanent light and power both at the commencement of and throughout the progress of the job.

14. Douglas Etling, Pathman's General traveling superintendent, William Spray, Pathman's job superintendent, Everett Glover, an employee of the mason contractor, and William Pathman, president of Pathman Construction Company, also testified in support of defendant's Counterclaim. All of this testimony was disputed vigorously by HiWay's witnesses and no reference appears in the IDR's with regard to any delays caused by HiWay with respect to either the electrical work required in the seven buildings being remodeled; or to the electrical work necessary to energize the permanent heat in the Barracks and the AVTEC Building; or to the alleged insufficient manpower or materials for the electrical work required in the remaining phases of construction for the exterior walls of the Barracks and AVTEC Building, the preparatory work in connection with the suspended grid ceiling in the AVTEC Building, the installation of fixtures in that ceiling, or the placing or pouring of each of the concrete decks or slabs in the Barracks and the AVTEC Building, or the testing of the boilers in the subsistence Building; or to reputed shortages of materials such as cable for the transformers, branch circuit wire, fixtures and conduit.

In addition, by use of the Weekly Construction Reports, plaintiff's witness Goodman was able to demonstrate that HiWay's electrical work on the various construction phases had been performed in proper sequence with the other trades as shown in the IDR's and charts taken from the IDR's. The Court credits the testimony of Robert Goodman and finds that the testimony of Etling, Spray, Glover and Pathman are not credible and go against the weight of the evidence.

Further, the Court does not credit the testimony of William Pathman as it relates to alleged meetings between himself and Robert Goodman, sometime in November and December 1968. Nor does the Court find his testimony credible as it relates to an explanation of the notations on plaintiff's exhibit BB2. His testimony goes against the weight of the evidence.

Plaintiff's witness, Robert Goodman, testified that he received exhibit BB2 from Pathman with certain notations already on it, and the Court finds that the testimony of Robert Goodman is credible. In addition, the Court credits the testimony of John Campbell, a defense witness, with respect to the fact that the notations made on exhibit BB2 could not have been made without first seeing defendant's exhibit 106, an exhibit which HiWay did not receive until after trial had commenced. The Court finds that the notations and other alterations of the bars or graphs on this exhibit to which Mr. Campbell testified were not made by or at the instruction of HiWay.

15. From all of the foregoing, the Court finds that HiWay did not breach its contractual obligation to "carry forward and complete said work as rapidly as said Contractor may judge the progress of the structure will permit, but rather finds that HiWay did "accomplish work in accordance with the progress schedule for this project and as directed by the Contractor's Superintendent." Accordingly, the Court finds that HiWay was not responsible for delays in the scheduled completion of the concrete work and the start of the masonry work. The Court also finds that HiWay performed its remodeling work timely. The Court further finds that the proofs establish the fact that HiWay met its contractual obligation to provide all necessary temporary lighting and power, and it did not delay all other subcontractors in the performance of their jobs.

16. The Court has considered the remaining allegations and proposed findings of fact submitted by the defendants and finds that they are not credible in material part. Accordingly, with respect to Pathman's counterclaim damages, the Court finds that the damages were not caused by HiWay's alleged breaches of contract and in addition, were not within the contemplation of the parties. Having found that Pathman's proofs in support of its counterclaim are not credible, the Court declines to award it any of the damages therein alleged.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under the Miller Act, 40 U.S.C.A. § 270a et seq.

2. Plaintiff HiWay Electric Company fully, completely, and timely performed all the work and supplied all the materials required of it under the subcontract and is entitled to payment of the balance due thereunder, together with the amounts due under the change orders and extra work orders. The plaintiff has proved all of the essential elements and the alleged facts of the elements of Count I of the Complaint by a preponderance of the evidence.[6]

3. Nothing in the actions or failure to act of HiWay during the course of construction constituted duress or "business compulsion" on its part against Pathman Construction Company.

4. The issues raised by Count I of the Complaint and the Amended Answer filed thereto are with the plaintiff, HiWay and against the defendants, Pathman Construction Company and Home Indemnity Company.

5. After allowing all due credits, deductions, setoffs and back charges to which the defendant Pathman is entitled, there is due and owing from Pathman Construction Company to HiWay the sum of $48,653.04, which amount was due on March 2, 1970, and which amount has been duly and properly indemnified by defendant Home Indemnity Company.

A judgment should be entered for plaintiff HiWay Electric Company jointly and severally against defendants Pathman Construction Company and Home Indemnity Company on Count I of the Complaint in the amount of $48,653.-04 plus interest at the legal rate thereon in accordance with the statutes of the State of Michigan, from March 2, 1970 through the date of entry of such judgment. The Court awards such interest to plaintiff in accordance with the provisions of Michigan Revised Statutes, Chapter 438, Sections 438.7 and 438.31, having determined that the sum of $48,653.04 was liquidated as of March 2, 1970, the date HiWay completed its punch line list items.

In *Currie v. Fiting* (1965) 375 Mich. 440, 454, 134 N.W.2d 611, 616, the Court said, "Where a claim accrues as of a certain date and can be ascertained or computed as of that date, we think the better rule is to award interest upon the claim from that date forward." The evidence in the case at bar shows that HiWay completed the "punch list" items on the Selfridge Project on or about March 2, 1970. As of this date, both HiWay's right to recover as well as the amount due and owing to it from Pathman was fixed and certain. That Pathman did not pay HiWay this amount was unreasonable. The case clearly comes, therefore, within the provisions of the Michigan Statute which makes it

---

6. The Court holds that the Inspector's Daily Reports were properly admitted in evidence. Defendant has argued that these IDR's were not admissible in that they are allegedly not certified or authenticated. This argument is completely without substance since defendant Pathman clearly stipulated to the admissibility of these documents. Item 6 of the Schedule of Exhibits attached to and made part of the Final Pre-Trial Order in this case, under the heading "ADMISSIBILITY STIPULATED," reads: "Daily Inspection reports made by representative of and employee of the Naval Facilities Engineering Command." Moreover, the Court finds that the charts introduced into evidence by HiWay were accurate and complete.

lawful to award interest in those cases covered by Section 438.7. *Cataldo v. Winshall, Inc.,* 3 Mich.App. 290, 295, 142 N.W.2d 28 (1966). Accordingly, the Court finds that HiWay is entitled to interest at the statutory 5% rate, to be computed from March 2, 1970.

6. The Court finds that HiWay did not fail to call any material witnesses. Further, it finds that HiWay did not breach Paragraph I of the contract in that HiWay did not fail to provide all necessary temporary lighting and power. HiWay did not breach Paragraph 5 of the contract in that it did not fail to carry forward and complete its work as rapidly as the contractor may judge that the progress of the structure will permit. Nor did HiWay breach Paragraph 6 of the contract in that it did not fail to prosecute its work with due diligence, without delay, or by delaying and otherwise interfering with the work of the contractor and other subcontractors. HiWay did not breach Paragraph 15(2) of the contract because it placed all orders for materials to insure delivery within the time needed, and it accomplished its work in accordance with the progress schedule for the project and as directed by the contractor's superintendent.

7. The defendant and counterclaimant, Pathman, has failed to prove any of the essential elements and the alleged facts of each element of the Counterclaim by a preponderance of the evidence.

8. The issues raised by the Counterclaim filed by Pathman and the Reply thereto filed by HiWay are with the plaintiff and counter-defendant HiWay and the Judgment on the Counterclaim should be entered in favor of the Counter-Defendant and Plaintiff.

9. Plaintiff HiWay has moved this Court to strike from the records defendant's reply brief, or in the alternative to strike paragraph B of defendant's Motion, and strike paragraph B of Section I of defendant's reply brief. This motion should be, and hereby is, denied. Defendant and Counterclaimant Pathman has moved this Court to strike from the record the two exhibits attached to the Memorandum of Law of Use-Plaintiff and Counter-Defendant HiWay Electric Company which plaintiff filed with this Court on January 23, 1975. Of the two documents which were so attached, the Complaint before the Armed Services Board of Contract Appeals was ruled inadmissible at trial. The second document, an Order of the United States Court of Appeals, was also affixed to the brief which HiWay submitted. The admissibility or relevance of this document was neither ruled upon by this Court at trial nor brought to the attention of this Court in a timely fashion. Accordingly, defendant's motion to strike these two exhibits should be, and hereby is, granted.

10. The law is with the subcontractor and against the prime contractor. Any ambiguity in the subcontract must be construed in favor of HiWay.

It is so ordered. Counsel for plaintiff and counter-defendant HiWay Electric Company will submit an appropriate judgment order in accordance with these Findings of Fact and Conclusions of Law.