Jasper ROBERSON, Relator-Appellant,

v.

STATE OF CONNECTICUT, Respondent-Appellee.

No. 1020, Docket 74–1072.

United States Court of Appeals,
Second Circuit.

Argued May 8, 1974.

Decided July 31, 1974.

Henry Mark Holzer, Brooklyn, N. Y., for relator-appellant.

Jerrold H. Barnett, Asst. State's Atty., New Haven, Conn., for respondent-appellee.

Before ANDERSON, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

Jasper Roberson, a state prisoner, appeals from a judgment of the United States District of Connecticut, T. Emmet Clarie, Chief Judge, dismissing his petition for a writ of habeas corpus.

Appellant's principal claims are that his constitutional rights were violated because his probation was revoked on the basis of other convictions then under appeal and because the state has unduly delayed the hearing of those appeals. For reasons stated below, we affirm the dismissal of the former claim and remand to the district court for consideration of the latter.

I

The chronological history of this case is complicated but essential to an understanding of the issues before us. In January 1970, appellant was convicted in a Connecticut state court of possession of heroin. He received a suspended sentence of two to five years imprisonment and was placed on probation. Shortly thereafter and while on probation, appellant was arrested and incarcerated on charges of robbery. These charges were tried separately: In June 1971, appellant was convicted of robbery and in October 1971, of robbery with violence. Concurrent sentences of two to four and four to eight years imprisonment were imposed. What happened next is the basis for appellant's first contention on this appeal. On October 8, 1971, a state court hearing was held to determine whether probation on the heroin offense should be revoked. The state relied primarily on a probation report detailing appellant's alleged involvement in the robberies and noting the fact of his June 1971 conviction. The state judge was also aware of the October conviction since he had just presided over the trial. When asked whether he agreed with the contents of the report, appellant responded through his counsel that the convictions were in the process of being appealed and that probation could not be revoked on the basis of such non-final convictions. The judge rejected this argument, reasoning that "the violation of

probation is the conviction of any crime," and revoked Roberson's probation, ordering the term of imprisonment for the drug offense to be served consecutively to those for the robbery offenses. The Supreme Court of Connecticut affirmed the revocation of probation in a thorough opinion. Conn., 327 A.2d 556 (1973).

Appellant then filed a petition for habeas corpus in the United States District Court for the District of Connecticut, alleging that it was a denial of due process for Connecticut to revoke his probation because of criminal convictions still pending on direct appeal. In September 1973, Judge Jon O. Newman dismissed the petition on the merits in an unreported memorandum.[1] Appellant took no appeal from this decision.

Shortly after the decision by Judge Newman, appellant filed in the district court a second habeas petition, which is the subject of this appeal.[2] This petition raised the same claim of unconstitutional revocation of probation as did the earlier one. Judge Clarie also rejected the argument on the merits. The second habeas petition alleged in addition that Roberson had been denied his right to appellate review of his robbery convictions because of the state's "lack of diligence" in defending the appeals. At the time, some two years had elapsed since the convictions on the robbery charges and Roberson's appeals were not yet close to the stage of being heard by the Connecticut Supreme Court. Moreover, maintained appellant, this delay was very largely the fault of the state. Under Connecticut practice, a party seeking appellate review of a criminal conviction after a jury trial must file with his appeal a request for findings by the trial court and a draft of proposed findings. Conn. Practice Book (CPB) § 629. This request must contain a statement of the questions of law sought to be reviewed;

---

1. Roberson v. Robinson, Civ. No. H–165 (D. Conn. Sept. 13, 1973).

2. Roberson verified the second petition in prison prior to Judge Newman's decision.

Appellant observes in his brief that the record does not show that he received notice of that decision.

if evidentiary rulings or the charge to the jury are at issue, the draft finding must contain enough of the allegedly proven facts to show that the ruling or charge, if erroneous, was harmful. CPB § 630. The draft finding cannot be prepared until the party has obtained a transcript since CPB § 631 requires that the draft finding make appropriate references to the transcript. Transcripts are available only from the court reporters, who are employees of the state. Appellant's trial counsel ordered a transcript of the first robbery trial in August 1971 and of the second in November 1971. Yet the transcripts (totalling some 2,000 pages) were not delivered until December 1972, 16 and 13 months respectively after they were ordered.

Judge Clarie did not reach the merits of the claim of undue delay, holding instead that appellant had failed to exhaust his state remedies. CPB § 696 provides in relevant part:

> If a party shall fail to defend against an appeal or writ of error with proper diligence [the supreme court] may, on motion by any other party to the appeal or writ of error, or of its own motion, set aside in whole or in part the judgment under attack, with costs, and direct the entry of an appropriate final judgment by the trial court against the party guilty of the failure.

The judge ruled that this section offered Roberson "a plain, speedy, and efficient state court remedy" for the state's alleged lack of diligence in defending against his appeals. Since Roberson had made no motion under the section, the judge dismissed the petition for failure to exhaust. Appellant thereafter filed a notice of appeal and sought, and obtained, a certificate of probable cause.

After Judge Clarie's decision, appellant also returned to state court and made a motion under section 696 to set aside the robbery convictions. In January 1974, the Connecticut Supreme Court granted the motion with respect to the first conviction unless the state should file its counterfinding by January 22, 1974, and denied it with respect to the second. The state filed its counterfinding on January 14 and the first conviction remained in effect.

Meanwhile, appellant's trial counsel had filed the draft findings with respect to both robbery convictions in August 1973, eight months after receiving the transcripts. As noted above, the state submitted its counterfindings on the first conviction in January 1974, five months later, and the trial court released its findings in March. Apparently, the appeal from the first conviction will be heard at the October 1974 Term of the supreme court, by which time over three years will have passed since the judgment of conviction. As of the date of oral argument in this court, the state had not yet submitted its counterfindings on the second robbery conviction. Appellant received parole from his two sentences for robbery in June 1973, and is now serving his sentence for the heroin offense on which probation was revoked.

## II

Appellant's first contention to us is that revocation of his probation on the heroin offense because of robbery convictions still subject to direct appeal was a denial of due process. He reasons that "although probation can be revoked without a conviction, or on a conviction alone, once an appeal is taken the equation is drastically changed, and the Constitution then prohibits revocation before the probationer's direct appellate rights are exhausted." [3] This is so, says appellant, because the right of appeal is of "tremendous importance," presenting an opportunity to correct legal errors which may have occurred below and to achieve that near-certainty of wrongdoing which society demands before a man can be deprived of his liberty. Appellant would have the state present at the revocation hearing some independent ev-

3. Brief at 14.

idence that the probationer engaged in conduct constituting a crime.[4]

While appellant's argument has a superficial appeal, we do not believe his due process claim is valid. Essentially, appellant is contending that he has a federally protected right to suspension of the revocation order during the pendency of his appeal from the conviction that triggered the revocation. Clearly, he has no such right. All that is required for revocation of probation is that the court be satisfied that the probationer has abused the opportunity given him to avoid incarceration. United States v. Nagelberg, 413 F.2d 708, 709 (2d Cir. 1969), cert. denied, 396 U. S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970). And, as the Connecticut Supreme Court observed in its opinion in this case, "[i]t is universally held that the commission of a felony violates a condition inherent in every probation order." Conn., 327 A.2d 556 at 558. Moreover, even though revocation is based upon felonious conduct, the Constitution does not require that proof of such conduct be sufficient to sustain a criminal conviction. United States v. Nagelberg, supra, 413 F.2d at 709; United States v. Garza, 484 F.2d 88, 89 (5th Cir. 1973) (per curiam). Here, the revocation proceeding was held up until the robbery charges were tried, a protection for the probationer not required under our cases. See, e. g., United States v. Markovich, 348 F.2d 238, 240 (2d Cir. 1965). But cf. ABA Project on Standards for Criminal Justice, Standards Relating to Probation § 5.3 at 63–64 (Approved Draft 1970) (suggesting that revocation proceeding should, as a matter of policy, be postponed until after disposition at the trial level of the new criminal charge). A criminal conviction after a trial at which the probationer was entitled to all the protections afforded a criminal defendant including formal rules of evidence, the right to assigned counsel if indigent, and the requirement that the state establish guilt beyond a reasonable doubt certainly affords a more than sufficient basis for revocation of probation, even if that conviction is still awaiting appellate review. United States v. Garza, supra, 484 F.2d at 89; United States v. Ambrose, 483 F.2d 742, 753–754 (6th Cir. 1973); United States v. Carrion, 457 F. 2d 808 (9th Cir. 1972) (per curiam).

Of course there is a risk of unfairness to a probationer whose freedom is taken away because of a conviction which is later reversed.[5] But there are competing policies to consider as well. It is likely that in most cases a probationer, again convicted of a crime, presents some danger to society even though the later conviction has not yet been reviewed. It is worth noting that appellant was arrested for robberies, one involving violence, less than two weeks after receiving probation on a very serious charge. Surely, then, a probationer cannot be in a better constitutional position than any other state prisoner convicted of a crime, who seeks bail on appeal. Despite appellant's argument to the contrary, it is clear that there is no absolute federal constitutional right to bail after a state conviction. United States v. Fields, 466 F.2d 119, 121 (2d Cir. 1972); Hamilton v. New Mexico, 479 F.2d 343 (10th Cir. 1973) (per curiam); Bloss v. Michigan, 421 F.2d 903, 905 (6th Cir. 1970) (per curiam). Yet that is the practical effect of what appellant seeks here. Moreover, requiring revocation of probation to await the end of the appellate process on the underlying conviction would create a further constitutional anomaly. Appellant con-

---

4. This, so appellant informs us, is the procedure followed in Texas. See Harris v. State, 169 Tex.Cr.R. 71, 331 S.W.2d 941 (1960). But while the Texas courts are free to adopt such a procedure, we hold, infra, that the Constitution does not impose it upon Connecticut.

5. We need not deal here with the effect of such a reversal on the revocation order. See State v. Roberson, supra, Conn., 327 A. 2d at 559.

cedes that a probationer found to have committed a felony on the basis of independent evidence introduced at a relatively informal hearing, at which the state does not have the burden of proof beyond a reasonable doubt, can be incarcerated immediately. See Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 484–489, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972). We do not see why a probationer, who has already received a full criminal trial on an offense found to justify revocation of probation, should receive more favorable treatment.

Accordingly, we reject appellant's argument that revocation of his probation because of convictions then on appeal denied him due process.[6]

### III

■ Roberson's second contention is that he was denied an asserted federal constitutional right by the undue delay in the processing of his appeals from the state robbery convictions. As our statement of facts, Part I supra, indicates, there is no doubt that these appeals in the state courts have not proceeded with dispatch.[7] Judge Clarie did not deal with this claim on the merits, holding that Roberson was first required to exhaust his state remedy and dismissing his habeas petition for that reason. Under our recent decision in Ralls v. Manson, 503 F.2d 491 (2d Cir. 1974) (per curiam), this ruling was proper. We could, therefore, merely affirm the dismissal of the petition, allowing Roberson to file a new one after exhaustion of his state remedy. But in the situation now before us, that disposition would be unduly technical. As we

have indicated, appellant has already followed the course Judge Clarie suggested. Roberson's motion in the state courts has been made, and was granted in part and denied in part by the Connecticut Supreme Court. Accordingly, we believe that the case should now be remanded to the district court. Unlike the plaintiff in *Ralls*, supra, Roberson has now given the state courts an opportunity to consider his claim of undue delay in the state process. Therefore, he should be allowed to press in the federal district court his contention that his federal constitutional rights have been and are being violated by such delay. We express no opinion on the substance of this claim or on any possible argument respondent may make in the district court as to why on the facts then available the court should not reach the issue on the merits. But should the district court reach the merits, a remand will allow the making of a substantial record on whether the delays complained of by this appellant are isolated occurrences or predictable products of Connecticut appellate procedures. See Judge Blumenfeld's findings in Ralls v. Manson, 375 F.Supp. 1271 (D.Conn.1974), rev'd on other grounds, 503 F.2d 491 (2d Cir., 1974) (indicating that from November 1970 through December 1973 the *average* time between conviction and final determination of the appeal was 30 months). As Judge Lumbard remarked, concurring in *Ralls*,

> Apparently, [the Connecticut practice of submitting findings and counter-findings] has been found to be a time-consuming, expensive and altogether archaic practice which puts an unnecessary burden on counsel and the trial judge, and results in inordinate

**6.** Because of this disposition, we find it unnecessary to consider Judge Clarie's (and the Connecticut Supreme Court's) alternative holding that Roberson admitted his involvement in the robberies when he stated at the revocation hearing that he agreed with the contents of the probation report. Roberson maintains that he admitted only that he had been convicted and that the probation report correctly related the state's allega-

tions. Indeed, an admission of guilt would appear inconsistent with appellant's insistence that his convictions could not justify revocation because they were being appealed.

**7.** Appellant does not appear to have been entirely without fault; his trial counsel filed the draft findings some eight months after receiving the transcripts.

delay. Of course, it is not for the federal courts to devise rules for state practice. But if such rules play a part in the denial of constitutional rights, the fact that their use is tolerated would be no excuse for delays which might substantially diminish or nullify due process rights.

at 499.

Affirmed in part, remanded in part for further proceedings consistent with this opinion.[8] The court wishes to thank Henry Mark Holzer, Esq., assigned counsel for appellant, for his dedicated efforts on this appeal.

MANSFIELD, Circuit Judge (concurring and dissenting):

I concur in Judge Feinberg's excellent opinion, except for Part III.

The essential facts with respect to the nature and extent of the inordinate delays resulting from Connecticut's archaic appellate procedure in the processing and disposition of criminal appeals are not in dispute. See Ralls v. Manson, 375 F.Supp. 1271 (D.Conn.1974), reversed on other grounds, 503 F.2d 491 (2nd Cir. July 5, 1974).[1]

Rather than remand this case to Judge Clarie for confirmation of the delays that prevailed at the time of Roberson's appeal, I would, on the basis of the record before us, decide now whether he was entitled as a matter of due process to have his appeals processed and heard within a shorter period of time than that permitted by Connecticut's procedure. That issue is not easily resolved. Although a defendant, subject to certain conditions, is constitutionally entitled to a speedy trial in accordance with the Sixth Amendment, see Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), denial of a speedy appeal may not amount to a denial of due process. Cf. United States v. Massino, 432 F.2d 324 (2nd Cir. 1970) cert. denied, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 633 (1971) with Way v. Crouse, 421 F. 2d 145 (10th Cir. 1970).[2] Some of the reasons advanced in favor of a speedy trial (e. g. the express terms of the Sixth Amendment, the presumption of innocence, the risk of loss of evidence) are not persuasive in determining whether the Constitution requires an appeal to be heard within a prescribed period of time, or indeed, at all. Repeatedly the Supreme Court has stated "that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, e. g., McKane v. Durston, 153 U.S. 684, 687–688 [14 S.Ct. 913, 914–915, 38 L.Ed. 867]." Griffin v. Illinois, 351 U. S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed.

---

8. Appellant also contends on this appeal that he was denied his right to a speedy trial. Since this argument was presented neither to the district court nor, we are informed, to the state courts, we decline to consider it.

1. Upon oral argument counsel acknowledged the acceptability of statistics that had been presented to Judge Blumenfeld in *Ralls*, where he stated (375 F.Supp. at p. 1280) "While the appellate procedures theoretically provide for a final determination of a direct appeal within approximately six months, the procedure apparently works very differently in practice. The petitioner has submitted statistical tables representing the timetable of review of the seventy criminal appeals decided by the Connecticut Supreme Court between November 4, 1970, and December 18, 1973. The tables are not controverted or challenged by the state. The data indicate that during the three years covered by the tables, no criminal appeal taken by a defendant has received final determination by the Connecticut Supreme Court in less than thirteen months after a notice of appeal was filed. Moreover, less than ten percent of the criminal appeals by defendants decided during the three-year period were decided in less than eighteen months. Slightly more than half the appeals were decided in eighteen to thirty months, and almost forty percent of the appeals were pending more than thirty months before final decision. The average length of time for a criminal appeal by a defendant was approximately thirty months."

2. Nor does the fact that state appellate delay may excuse exhaustion of remedies upon an application for habeas corpus relief, United States ex rel. Graham v. Mancusi, 457 F.2d 463 (2nd Cir. 1972), bear any relevance to the possible unconstitutionality of the delay itself.

891 (1956). See also Monger v. Florida, 405 U.S. 958, 959, 92 S.Ct. 1163, 31 L. Ed.2d 236 (1972) (Douglas dissenting, joined by Brennan and Stewart).

The question here is whether, once having accorded Roberson a right of appeal, Connecticut was required by the Due Process Clause to process it promptly. See North Carolina v. Pearce, 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). I think we can and should resolve that issue on the records made available to us by the parties, rather than, by remanding, ourselves compound the delay that is the focus of Roberson's attack.