Raymond ARGRO, Appellee,

v.

**UNITED STATES of America,
Appellant.**

No. 12, Docket 74-1664.

United States Court of Appeals,
Second Circuit.

Argued Sept. 9, 1974.

Decided Oct. 8, 1974.

S. Cass Weiland, Atty., Dept. of Justice, Washington, D. C. (David E. Trager, U. S. Atty., E. D. N. Y., and Kenneth Kaplan, Asst. U. S. Atty., of counsel), for appellant.

Phylis Skloot Bamberger, New York City (William J. Gallagher and The Legal Aid Society, New York City, of counsel), for appellee.

Before SMITH, TIMBERS and GURFEIN,* Circuit Judges.

GURFEIN, Circuit Judge:

■ This is an appeal by the United States from an order of the United States District Court for the Eastern District of New York (Dooling, J.) entered on February 1, 1974. That order requires the United States Parole Board to conduct a *local* hearing to determine whether the parole of the appellant, Raymond Argro, should be revoked. The District Court also admitted Argro to bail.[1]

Argro was released on parole from a federal prison in February of 1967 after serving more than three years of a fifteen-year sentence for violation of 18 U.S.C. § 2113 under a commitment pursuant to 18 U.S.C. § 4208(a)(2). While

---

* At the time of the argument, Judge Gurfein was a District Judge of the United States District Court for the Southern District of New York sitting by designation.

1. The Government's brief concedes that the petition is for a writ of habeas corpus, but denies that *habeas* lies since outright release is not sought. We think the writ is available since even a parolee at large is "in custody." Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). He seeks outright release if the parole board fails to comply with the procedural conditions sought to be imposed. See also text accompanying n. 9, *infra*.

still on parole, he was arrested in June, 1972, in Binghamton, New York, on a state charge of possessing dangerous drugs. On the basis of that arrest the Board of Parole issued a violator's warrant in July, 1972, which was executed in November, 1973, several months after Argro was convicted on the state charge and after he was already at liberty on bail pending appeal to the Appellate Division of the New York Supreme Court.

The regulations governing parole, release, supervision, and recommitment of prisoners, 28 C.F.R. §§ 2.1 et seq., require a preliminary hearing to determine whether probable cause exists that a violation has occurred. They also require a revocation hearing which may be conducted at or near the place of an alleged parole violation if so requested by the parolee in his preliminary interview. The *local* revocation hearing is available, however, only if "the prisoner has not been convicted of a crime committed while under community supervision," Section 2.43(b)(2).[2] After the revocation hearing the parole board determines the disposition to be made of the parolee. *See* Morrissey v. Brewer, 408 U.S. 471, 484–490, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).[3]

When, after his preliminary hearing, Argro was ordered removed to the Lewisburg institution for his revocation hearing, he applied to the court for a stay of his removal. A stay was granted on December 21, 1973, and on February 1, 1974, the order on appeal continued that stay. Judge Dooling, in a reasoned opinion, admitted Argro to bail and ordered the parole board to grant Argro a *local* revocation hearing, rather than a hearing at Lewisburg, partly be-

cause he thought that, under the requirements of *Morrissey,* a conviction that was still on appeal could not be considered a "conviction" within the meaning of § 2.43(b)(2) of the regulations.[4] The District Court also held that Argro's *Morrissey*-derived right to present mitigating evidence [and evidence rebutting the alleged violation] at his revocation hearing could only be protected in a *local* hearing, rather than in a hearing at the institution.[5] In short, the Court held that the appellee was entitled to a *local* parole revocation hearing to determine disposition as well as violation.

I

■ When Judge Dooling made his decision, Roberson v. Connecticut, 501 F.2d 305 (2 Cir. 1974), had not yet been decided. There a revocation of *probation* was challenged on grounds similar to those asserted here. We held that a criminal conviction provides a "sufficient basis for revocation of probation, even if that conviction is still awaiting appellate review." at 308 Since the due process requirements for parole revocation are generally the same as those applicable to probation revocation, see Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), our holding in *Roberson* undercuts an important ground of Judge Dooling's order. While, strictly speaking, *Roberson* is distinguishable from this case in that it dealt with the substantive contention that revocation was constitutionally improper when based on a conviction subject to direct appeal, rather than with the procedural requirements of revocation, its importance to the resolution of this case is evident.[6] Moreover, Argro's

2. The Section has since been renumbered Section 2.40, 28 C.F.R. (July 1, 1974), p. 87.

3. *Morrissey* was decided on the assumption that the record failed to show that "petitioners in fact have admitted the violations charged before a neutral officer." 408 U.S. at 477, 92 S.Ct. at 2598.

4. The District Court said: "It must be supposed that Rule 2.43(b)(2) means such a

conviction as puts guilt, and therefore parole violation, beyond question, and, hence, leaves open only the Board's determination to reinstate, revoke or modify the parole terms and conditions."

5. See Morrissey v. Brewer, *supra,* 408 U.S. at 488, 92 S.Ct. 2593.

6. Putting a parole violator who is convicted of a new offense in a separate category was

state conviction has now been affirmed by the Appellate Division of the New York Supreme Court.[7] His parole revocation proceedings, therefore, have taken on a different aspect from that which Judge Dooling considered in February.

■ Because of the importance of *Roberson* and the significant change in the circumstances of Argro's case, we have concluded that the cause should be remanded for further consideration by the District Court. Without passing finally on the merits of the appeal, we make several additional observations for special attention.

Concerning Judge Dooling's holding that there is a right to present mitigating evidence which requires a *local* revocation hearing, we do not take this to be a mandated right under Morrissey v. Brewer, *supra*; see Cook v. U. S. Attorney General, 488 F.2d 667 (5 Cir. 1974).[8] If the District Court adheres to this phase of its decision in the circumstances of this case, it would be desirable for it to make findings or at least to express particular reasons why a local hearing should be had on mitigation alone and, if so, whether the locality should be Binghamton (where the violation was committed) or New York City (where the appellee resides).

## II

The District Court granted bail on an appearance bond in the amount of $15,000 secured by the deposit of $1,500 in cash, largely because it gave "appro-

priate deference" to the admission of Argro to bail pending appeal in the state court, subject to a showing that the judge who granted bail had not known that the parolee was on federal parole and that a warrant had been issued but not executed. The appellee was unable to make bail and appellant did not make the proof suggested. Bail was subsequently modified to require a personal appearance bond in the amount of $25,000 without the deposit of cash or other security.

In view of the affirmance by the Appellate Division and the holding in *Roberson, supra,* the District Court will be given the opportunity to review the bail situation.

■ Implicit in that direction, of course, is the conclusion that the district judge did have the *power* to grant bail in this matter. While there is no constitutional right to bail in these circumstances, see In re Whitney, 421 F.2d 337 (1 Cir. 1970), we think there may be adequate ground to support its grant in unusual cases, at least in a bona fide inquiry into whether a parole revocation is being conducted pursuant to due process. See Baker v. Sard, 137 U.S.App.D.C. 139, 420 F.2d 1342 (1969); Johnston v. Marsh, 227 F.2d 528 (3 Cir. 1955).

The New York Court of Appeals has rejected a contention that there is a due process right to bail for a parolee detained in advance of a revocation hearing. The specific ground for the decision was that there was a lack of state

---

recognized as proper by the present Chief Justice in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 246 (1963):

"Those who have not denied the charged violation of parole or any whose parole was revoked because of a criminal conviction would not now be benefited by a hearing which is designed specifically to make a record only in cases where the fact of violation is controverted."

7. An application for leave to appeal to the New York Court of Appeals has been filed.

8. A finding of "probable cause to hold the parolee for the final decision of the parole

board on revocation . . . would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." Morrissey v. Brewer, *supra*, 408 U.S. at 487, 92 S.Ct. at 2603. In People ex rel. Calloway v. Skinner, *infra*, both the majority and minority opinions assumed that under *Morrissey* the requirement for a local hearing would apply only to the "preliminary hearing" to determine probable cause. 33 N.Y.2d at 34–35, 36, 347 N.Y.S.2d 178, 300 N.E.2d 716.

statutory authority. People ex. rel. Calloway v. Skinner, 33 N.Y.2d 23, 34, 347 N.Y.S.2d 178, 300 N.E.2d 716 (1973). See also In re Law, 109 Cal.Rptr. 573, 513 P.2d 621 (1973). We need not decide whether there is never a right to bail on the normal detention of a parolee pending a revocation hearing.

■■■ Here the application to the District Court was on the propriety of the revocation proceeding itself. That is properly treated as akin to habeas corpus, which is also a civil action and where bail may be granted.[9] See Johnston v. Marsh, *supra;* Boyer v. City of Orlando, 402 F.2d 966 (5 Cir. 1968).

■■ The recognition that there is power to grant bail in these circumstances is not to say that it should be readily exercised. The presumption of innocence is no longer available and the threat of reincarceration may prove a strong inducement for flight.[10] Though this is not a collateral attack on the original conviction, see Glynn v. Donnelly, 470 F.2d 95 (1 Cir. 1972), the history of the offender, already under sentence, militates against bail. In the case of a parolee convicted of a new offense while on parole, we would think release on bail pending a revocation hearing under challenge to be proper only under the most unusual circumstances. *Cf.* Calley v. Callaway, 496 F.2d 701 (5 Cir. 1974). See Douglas, J., upon an application for bail in Aronson v. May, 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1965).

Since we believe it proper for the District Court to reconsider this case in its present posture, the order is vacated, and the cause remanded for further proceedings consistent with this opinion. The stay will continue pending further action by the District Court.

---

9. This treatment keeps clear the fact that primary jurisdiction over the parolee lies with the parole board.

10. As Chief Justice Burger (then Circuit Judge) has noted: ". . . It is hardly helpful to compare his rights in that posture [as appellee] with his rights before he was duly convicted." Hyser v. Reed, *supra*, 318 F.2d at 235.