**Anthony Joseph DiRUSSO**

v.

**UNITED STATES of America**

**No. CA 76–520–T.**

United States District Court,
D. Massachusetts.

March 19, 1976.

---

**1056**

Charles A. Clifford, Charlestown, Mass., for plaintiff.

Asst. U. S. Atty. William A. Brown, Boston, Mass., for the United States.

### MEMORANDUM

TAURO, District Judge.

■ On March 8, 1976, this court allowed plaintiff's request to be admitted to bail.[1] This memorandum is written in order to place on the record the court's reasons for doing so.

On February 10, 1975, Anthony DiRusso pleaded guilty to one count of armed bank robbery.[2] He had no prior criminal record. On March 10, 1975, he was committed to the custody of the Attorney

1. The conditions of his release were identical to those imposed prior to his sentence: including a $1500 cash bond and the requirement that he report daily to Brother Robertus Duffy, C.F.X., Headmaster, Malden Catholic High School.

2. 18 U.S.C. § 2113(d). A second count was dropped following disposition.

General pursuant to Section 2(b) of the Federal Youth Corrections Act, 18 U.S.C. § 5010(b). That subsection provides in full:

> If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for *treatment* and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter . . . .[3] (emphasis supplied).

On February 6, 1976, DiRusso filed a motion to vacate sentence under 28 U.S.C. § 2255. Fairly construed, DiRusso alleges that the sentence he is now receiving is not what this court had in mind when it sentenced him under the Youth Corrections Act. That is, DiRusso alleges, he is not receiving *treatment* and supervision as the terms of the statute led the sentencing judge to believe he would.

On March 8, 1976, this court commenced the hearing on petitioner's 2255 motion. The court heard, out of order, testimony from two government witnesses: Stacy Beluizis, the Supervising Case Manager at F.C.I. Ashland, Kentucky where DiRusso is confined; and Daniel Capolanno, a representative of the United States Parole Board.[4] Although Mr. Beluizia is a Supervising Case Manager, he has had virtually no personal contact with DiRusso in the nine months since his confinement. His testimony was based on a review of records prepared primarily by Paul Helo who is DiRusso's

3. *See* Appendix.

4. With the agreement of counsel, the hearing was adjourned following the testimony of these two witnesses in order to give the parties additional time to assemble certain documents and to arrange the scheduling of future witnesses.

Case Manager and who supervises him on a daily basis.

On the basis of the testimony of these two witnesses, this court makes the following preliminary findings, reserving the right to make supplementary or even contrary findings at the conclusion of the evidence.

## I.

## PRELIMINARY FINDINGS

DiRusso has been confined at F.C.I. Ashland, Kentucky since June 19, 1975. His adjustment at Ashland has been satisfactory since his commitment. He has had no difficulty relating either to other inmates or the institution's staff. He is not considered a disciplinary problem nor a threat to the institution's security.

Although he participated in a high school refresher course up to December 1975, his attendance was less than perfect, presumably due to an eye impairment in the form of a detached retina. Since December 1975 DiRusso has received no training because none is available to him due to a proposed change in the mission of F.C.I. Ashland. This change would make F.C.I. Ashland a retention center for older, higher risk inmates as opposed to a treatment center for younger persons. Since December, DiRusso's principal activity has been to distribute clothing to his fellow prisoners in the institution's laundry.

Approximately six weeks after his commitment, his parole situation was reviewed by members of the U.S. Parole Board. The Parole Board's decision at that time was to postpone any further review of his parole status until August of 1977, a period of approximately twenty seven months following his commitment. This decision was based on an application by the Parole Board of its so-called "Guidelines" to DiRusso's file as it existed approximately six weeks

after confinement. According to the Parole Board representative who testified on behalf of the Government, the deferment of further parole review by the Board until August 1977 was also justified on the basis of "deterrence."

In sentencing DiRusso this court was aware of the Parole Board Guidelines, but was unaware that, as utilized by the Board, these guidelines would effectively mandate DiRusso's confinement for twenty-seven months, regardless of his satisfactory response to the treatment contemplated by § 5010(b). This court was also unaware that the Parole Board considered "deterrence" as a parole consideration even in § 5010(b) sentences calling for "treatment."

Upon adjournment of this hearing, the court admitted DiRusso to bail finding that he was neither a danger to himself nor to the community and because of its preliminary conclusion that there was a substantial likelihood that he would ultimately prevail on the merits.

## II.

In *Woodcock v. Donnelly,* 470 F.2d 93, 94 (1st Cir. 1972) the Court of Appeals held that "a district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits." Some months later, in *Glynn v. Donnelly,* 470 F.2d 95 (1st Cir. 1972), the court provided some guidance for district courts in exercising that discretion. It noted that bail is not to be granted unless the "petitioner presents not merely a clear case on the law, but a clear, and readily evident, case on the facts." *Id.* at 98 (footnote and citation omitted). Moreover, there must also be "some circumstances making this application exceptional and deserving of special treatment in the interests of justice." *Id.* (citation omitted).[5]

---

5. A motion under 28 U.S.C. § 2255 is not, of course, a traditional petition for habeas corpus. Such a motion would normally name as defendants officials in whose custody the petitioner is confined and be brought in the district where the petitioner is confined.

In the aftermath of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), five districts in which major federal correctional facilities were located became inundated with petitions brought by federal prisoners challenging their convictions and sentences.

In committing Mr. DiRusso under § 5010(b), this court chose to exercise its option to make available to him the treatment opportunities outlined in the Youth Corrections Act, as opposed to sentencing him as an adult offender. *See generally Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). In doing so, the court had in mind both the treatment provisions of § 5010(b) as well as the other portions of the statutory scheme which provided for periodic evaluation and release once the Attorney General's representatives determined treatment to have been concluded. *See* Appendix. It did not expect the Parole Board simply to impose actuarial guidelines—which are apparently based on factors other than treatment, such as deterrence—and then plan not to re-evaluate DiRusso until he had been confined for over two years.

▆ Under these circumstances, the court concludes that an exercise of its discretion under *Glynn* is proper.[6] The testimony elicited in this case to date has alerted the court to the substantial likelihood that DiRusso is not receiving "treatment" as contemplated by the imposition of a § 5010(b) sentence. Certainly, the court did not contemplate that the success of any treatment program would not be reviewed by the Parole Board for a period of twenty-seven months. While, under normal circumstances, the Parole Board may have discretion to apply its Guidelines to persons committed for treatment under the Youth Corrections Act, that discretion does not relieve a sentencing court of its responsibility to correct a sentence which was imposed under a misapprehension as to the potential impact of an application of that discretion. The court is also aware of instances in which other courts have faced similar problems. *See, e. g., U. S. ex rel. Mayet v. Sigler,* 403 F.Supp. 1243 (M.D.Pa.1975).[7] To be sure, when the record in this case is complete, the court may well conclude that DiRusso is not entitled to any relief. But on the facts presented so far, he has made a sufficient showing to justify his release on bail pending that determination.

### APPENDIX

18 U.S.C. § 5011 provides:

Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. The Director shall from time to time designate, set aside, and adapt institutions and agencies under control of the Department of Justice

This presented serious administrative problems for those few courts where petitions were brought as well as considerable inconvenience to witnesses who were required to travel from the site of the petitioner's trial. Accordingly, in 1948, the Congress substantially adopted a recommendation of the Judicial Conference and enacted § 2255, thereby providing federal prisoners a statutory remedy "intended to be as broad as habeas corpus," *United States v. Hayman,* 342 U.S. 205, 217, 72 S.Ct. 263, 271, 96 L.Ed. 232, 240 (1952), *quoting* Statement of the Judicial Conference Committee on Habeas Corpus Procedure, through which they could challenge their *sentence* or conviction, but which was brought in the *sentencing* court. *See generally* 2 C. Wright and A. Miller, Federal Practice and Procedure §§ 589–600, at 577–638.

There would seem to be no basis for distinguishing between a court's discretion to allow bail pending final determination of a § 2255 motion and its discretion to allow bail in a traditional habeas corpus case. *See Argro v. United States,* 505 F.2d 1374 (2d Cir. 1974). If anything, the discretion of a sentencing court to admit to bail in a § 2255 proceeding might be greater than it would be for a federal court hearing a habeas claim of a state prisoner in a context where considerations of federal-state comity come into play. *Cf. LaFrance v. Bohlinger,* 487 F.2d 506 (1st Cir. 1973).

6. The comity admonitions of *LaFrance v. Bohlinger,* 487 F.2d 506 (1st Cir. 1973) are inapposite here, this being a federal case and DiRusso being a federal prisoner.

7. *See also United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975); *Billiteri v. United States Board of Parole,* 404 F.Supp. 402 (W.D.N.Y. 1975).

for treatment. Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders, shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

18 U.S.C. § 5016 provides:

The Director shall cause periodic examinations and reexaminations to be made of all committed youth offenders and shall report to the Division as to each such offender as the Division may require. United States probation officers and supervisory agents shall likewise report to the Division respecting youth offenders under their supervision as the Division may direct.

18 U.S.C. § 5017 provides:

(a) The Division may at any time after reasonable notice to the Director release conditionally under supervision a committed youth offender. When, in the judgment of the Director, a committed youth offender should be released conditionally under supervision he shall so report and recommend to the Division.

(b) The Division may discharge a committed youth offender unconditionally at the expiration of one year from the date of conditional release.

(c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction. . . .